## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

NICHOLAS CURRAULT; ANDRÉ CURRAULT; TROY CURRAULT;
LOWER RIVER SHIP SERVICE, L.L.C.; SIDNEY FREEMAN,

*Plaintiffs – Appellees,*

v.

AMERICAN RIVER TRANSPORTATION CO., L.L.C., *in personam*, and
thirty-eight ARTCO Barges and their cargo, *in rem*, doing business as
Artco Fleeting Services,

*Defendant – Appellant.*

On Appeal from the United States District Court
for the Eastern District of Louisiana
Case No. 2:23-cv-02542-WBV-KWR

**BRIEF OF *AMICUS CURIAE***
**GREATER NEW ORLEANS BARGE FLEETING ASSOCIATION, INC.**
**IN SUPPORT OF APPELLANT**

Jefferson R. Tillery
Edward F. LeBreton, III
JONES WALKER LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170
Phone: (504) 582-8616
jtillery@joneswalker.com

*Counsel for Amicus Curiae Greater*
*New Orleans Barge Fleeting*
*Association, Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE</u>
## <u>DISCLOSURE STATEMENT</u>

Pursuant to <u>Federal Rule of Appellate Procedure 26.1</u> and <u>5th Cir. R. 28.1</u>, *amicus curiae*, Greater New Orleans Barge Fleeting Association, Inc. ("GNOBFA") discloses that it is a Louisiana non-profit corporation, has no parent corporation, and does not issue stock.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  **Plaintiff-Appellees:**

André Currault, Nicholas Currault, Troy Currault, Sidney Freeman, Lower River Ship Services, LLC

2. **Defendant-Appellant:**

American River Transportation Co., LLC ("ARTCO"), which disclosed, pursuant to <u>Federal Rule of Appellate Procedure 26.1</u>, that ARTCO is a wholly owned subsidiary of Archer-Daniels-Midland Company, a publicly held corporation traded on the New York Stock Exchange under the abbreviation "ADM."

**3. Counsel for Plaintiffs-Appellees:**

Thomas M. Flanagan, Andrés F. Holmgren, Matthew Slaughter, FLANAGAN PARTNERS, LLP

Adam Davis, ADAM DAVIS LAW FIRM

Stephen Huber, Taylor Bologna, HUBER THOMAS

**4. Counsel for Defendant-Appellant:**

Robert N. Hochman, Andrew F. Rodheim, H. Javier Kordi, SIDLEY AUSTIN LLP

Kevin M. Frey, Morgan Kelly, Marcelle P. Mouledoux, MCGLINCHEY STAFFORD, PLLC

Michael McAlpine, SCHOUEST BAMDAS SOSHEA BENMAIER & EASTHAM

**5. Counsel for *Amicus Curiae*, Greater New Orleans Barge Association, Inc.:**

Jefferson R. Tillery

Edward F. LeBreton, III

JONES WALKER, LLP

Dated: December 20, 2024  /s/Edward F. LeBreton, III

Jefferson R. Tillery

Edward F. LeBreton, III

*Counsel for Amicus Curiae*

*Greater New Orleans Barge*

*Fleeting Association, Inc.*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..............................................................i

TABLE OF AUTHORITIES ......................................................... v

I.      INTRODUCTION .................................................................. 1

II.     INTEREST OF AMICUS ..................................................... 1

III.    SUMMARY OF ARGUMENT ............................................... 3

IV.     BRIEF REVIEW OF THE FACTS ........................................ 4

V.      ARGUMENT ........................................................................ 5

    A.  The Coast Guard Regulates Hurricane Response on the Lower Mississippi River, and The Plaintiffs' Actions Should Be Judged in the Context of The Coast Guard's Regulations ............................................................... 6

    B.  Plaintiffs Were Positioned on the River Before ARTCO's Barges Broke Away and Should not Receive Salvage Awards to the Extent that They Were Acting in Their Own Self-Interest ............................................................... 8

    C.  The District Court Misapplied At Least Three of the Factors that Determine the Amount of the Salvage Award, Most Important Abused its Discretion, and Rendered a Judgement that Will Burden River and Fleet Operators with Excessive Awards ................................................... 11

        (i)   Legal Error ........................................................ 11

        (ii)  Abuse of Discretion .......................................... 14

    D.  The Award Encourages Unsafe Behavior ............................... 17

VI.     CONCLUSION.................................................................. 18

CERTIFICATE OF SERVICE .................................................... 20

CERTIFICATE OF COMPLIANCE ............................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Allseas Maritime, S.A. v. M.V Mimosa*,
    812 F.2d 243 (5th Cir. 1987) ............................................................. 3, 17

*The Blackwall*, 77 U.S. 1, 14 (1869) ............................................................. 11

*Curruault v Am. River Transp. Co., LLC*,
    2024 U.S. Dist. LEXIS 105875 (E.D. La. June 14, 2014) ....................... 4

*Dorthy J v. City of New York*,
    749 F. Supp. 2d 50 (E.D. N.Y. September 11, 2010) ............................ 12

*Dow Chemical Co. v. Barge M-23B*,
    424 F.2d 307 (5th Cir. 1970) ................................................................ 10

*Kentwood Ltd. v. United States*,
    930 F. Supp. 227 (E.D. Va. 1996) ........................................................ 13

*Margate Shipping Co. v. M/V J.A. Orgeron*,
    143 F. 3d 976 (5th Cir. 1998) ........................................... 11, 15, 16, 17

*Merritt & Chapman Derrick & Wrecking Co. v United States*,
    274 U.S. 611, 47 S. Ct. 663, 71 L. Ed. 1232 (1927) .............................. 9

*The No. 92*, 252 F. 117, 119 (2d Cir. 1918) ........................................ 14, 17

*The Sabine*, 101 U.S. 384 (1870) ................................................................ 8

*Siquieros v. United States*,
    2004 U.S. Dist. LEXIS 16798 (W.D. Tex. July 27, 2004),
    *affirmed* 124 Fed. Appx. 279, 2005 U.S. App. LEXIS 4774
    (5th Cir. March 23, 2005) .................................................................... 14

*Petition of Sun Oil Co.*,
    342 F. Supp. 976 (S.D. N.Y. 1972), *aff'd sub nom*, *Sun Oil
    Co. v. Govostes*, 474 F.2d 1048 (2d Cir. 1973) ................................ 8, 9

*Sunglory Mar., Ltd. v, PHI, Inc.*,
212 F. Supp. 3d 618 (E.D. La. September 9, 2016)........................ 13, 14

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997) ................................................................ 14

## Statutes and Regulations

33 C.F.R. § 3.40-156 .................................................................................. 6

33 CFR § 165.803 ....................................................................................... 7

## Other Authorities

*Benedict on Admiralty* § 63 (2024) ............................................................. 8

*Benedict on Admiralty* § 237 (2024) ......................................................... 13

*Benedict on Admiralty*, § 241 (2024) ....................................................... 14

*Economic Contribution of the US Tugboat, Towboat, and Barge
Industry, prepared for the American Waterways Operators*
("PWC Study"), chrome-
extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.a
mericanwaterways.com/sites/default/files/Econ%20Impact%
20of%20US%20Tugboat%20Towboat%20and%20Barge%2
0Industry%20lh%206-22-17.pdf (last visited November 4,
2024)............................................................................................................ 2

Safety Informartion Bulliten Vol. XXI, Issue 58,
https://content.govdelivery.com/accounts/USDHSCG/bulletin
s/2eed0da (last visited November 5, 2024) ............................................ 7

International Convention on Salvage, April 28, 1989, S. Treaty
Doc. No. 102-12, 1953 U.N.T.S. 193 ..................................................... 12

I.

# INTRODUCTION

The Greater New Orleans Barge Fleeting Association, Inc. ("GNOBFA") submits this *amicus curae* brief in support of the appeal of American River Transport Company, LLC ("ARTCO") because:

> First, the judgment disregards the extent the salvors acted in their own self-interest and will encourage future improper claims by similar parties acting in their own interests;
>
> Second, the district court misapplied at least three of the criteria for awards under the Salvage Convention; most important, the award is excessive and will encourage unduly large future awards that will burden river and fleet operators; and
>
> Third, the district court judgment encourages disruptive, opportunistic, and unsafe behavior by would-be salvors that will endanger property and themselves.

II.

# INTEREST OF AMICUS

GNOBFA[1] is a non-profit association of companies engaged in the operation of barge fleets and towboats on the Mississippi River between

---

[1] Pursuant to this Court's Rule 37.6, no counsel for a party authored this brief in whole or in part, and no person other than Amicus Curiae and its counsel made a monetary contribution to its preparation or submission. Further, both Petitioner and Respondent have given their consent to the filing of this Amicus Curiae brief.

1

Head of Passes and Baton Rouge, Louisiana, on the Gulf Intra-Coastal Waterway, and on adjacent canals.[2] The purpose of GNOBFA is to promote business relationships between members, to disseminate information pertaining to the river and fleeting industry in order to promote higher business standards, and to support the common interest of members.[3]

GNOBFA has over 58 full members, whose businesses are related to barge fleeting. On the Lower Mississippi River, there are over 100 commercial barge fleets.

Further, the river and fleeting industry has a substantial economic impact in the area where the Association operates. A 2017 study entitled the Economic Contribution of the US Tugboat, Towboat, and Barge Industry showed that the Tugboat, Towboat, and Barge Industry provided 15,620 jobs in Louisiana and annually provided $5.9 billion dollars in economic value to the state. [4]

---

[2] GNOBFA Articles of Incorporation, Art. II, www.gnobfa.com (Last visited November 25, 2024.)

[3] *Id.*

[4] *Economic Contribution of the US Tugboat, Towboat, and Barge Industry, prepared for the American Waterways Operators* ("PWC Study"), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.americanwaterways.com/sites/default/files/Econ%20Impact%20of%20US%20Tugboat%20Towboat%20and%20Barge%20Industry%20lh%206-22-17.pdf (last visited November 4, 2024).

This case involves an award given to Plaintiff towboat operators for salvaging breakaway barges during Hurricane Ida. GNOBFA has a strong interest in the outcome of this case because it occurred in the area where the Association's members do business and involves barge fleets and tugs similar to the fleets and tugs operated by the Association's members. GNOBFA members have a strong interest in ensuring that the award rewards true salvage efforts, that the amount does not set an excessive standard for future awards, and that the award does not encourage risky behavior by those seeking a windfall recovery.

III.

## SUMMARY OF ARGUMENT

A salvage award may be altered on appeal if it is based on misapprehension of the facts, incorrect principles of law, or is so excessive as to be an abuse of discretion. *Allseas Maritime, S.A. v. M.V Mimosa*, 812 F.2d 243, 246 (5th Cir. 1987). Here the award should be reversed or reduced for these reasons:

A. The Coast Guard regulates hurricane response. As Hurricane Ida approached, Plaintiffs positioned themselves on the River in accordance with Coast Guard regulations, and their actions must be viewed in the context of these regulations.

B. Prior to any peril to Artco's barges, the Plaintiffs had stationed themselves at their fleet to protect their own vessels. The district court committed legal error when it awarded Plaintiffs recovery for actions

that were for the primary purpose of protecting their own vessels, not to save Artco's barges. During storms similar personnel are present on the Lower Mississippi River. Rewarding would-be salvors for acts primarily in their own interests will result in future, improper awards against river and fleet operators.

C. The district court committed errors of law in applying at least three of the factors listed in the Salvage Convention and, most important, abused its discretion in determining the amount awarded. If the district court's decision is used as a guide in the future, it will result in outsized awards that will be an undue burden on river and fleet operators. This Court should act a gatekeeper to prevent such outlier awards.

D. The excessive award will encourage would-be salvors to take undue risks and endanger property and themselves in hopes of obtaining a windfall recovery.

IV.

BRIEF REVIEW OF THE FACTS

Defendant ARTCO owned and operated eleven fleets on the Lower Mississippi River. R. Doc. 43, p. 3 ("Opinion").[5] The Plaintiffs are Capt. Nicholas Currault and his father Troy Currault, who co-own the tug *Shell Fueler* and Lower River Ship Services, LLC ("Lower River"), André Currault, and Captain Sidney Freeman. Opinion, p. 4-6. (together "Plaintiffs)

On the evening of August 29, 2021, as Hurricane Ida approached, the Plaintiffs stayed aboard the *Shell Fueler* at Lower River to tend to the vessels

---

[5] Reported at *Currault v Am. River Transp. Co., LLC*, 2024 U.S. Dist. LEXIS 105875 (E.D. La. June 14, 2024).

4

in their own fleet and adjust their moorings during the storm.  Opinion, p. 6. During the storm, barges broke away from ARTCO's fleet and began drifting down river.  Opinion, p. 7.

At one point three barges from ARTCO's fleet approached the Lower River fleet, and Capt. Nicholas Currault used the wheel wash of the *Shell Fueler* to push the barges away from the Lower River fleet.  Opinion, p. 8. Capt. Nicholas Currault, André Currault, and Captain Freeman, continued to use the wheel wash of the *Shell Fueler* to push barges into the mud bank below Lower River Fleet.  Opinion, p. 8-9. When the winds let up in the morning of the 30th, the Plaintiffs used mooring lines to secure 23 ARTCO barges at the Lower River fleet.  Opinion, p. 9.

The district court granted a salvage award in favor of the Plaintiffs of 20% of the $18,807,500 fair market value of the 23 ARTCO barges, or $3,761,500.

V.

ARGUMENT

## A.

### The Coast Guard Regulates Hurricane Response on the Lower Mississippi River, and The Plaintiffs' Actions Should Be Judged in the Context of The Coast Guard's Regulations

The US Coast Guard regulates hurricane response. The actions of the Plaintiff salvors should be judged in the context of the Coast Guard's hurricane response directives.

The Coast Guard established Sector New Orleans Captain of the Port Zone, which includes the Mississippi River below Baton Rouge.[6] Sector New Orleans annually issues a Maritime Hurricane Contingency Port Plan ("Coast Guard Hurricane Plan").[7]

The Coast Guard Hurricane Plan establishes four increasingly severe conditions based on the predicted wind speed at Southwest Pass: Whiskey, X-Ray, Yankee, and Zulu.[8] The Coast Guard Hurricane Plan requires all Waterfront Facilities to review contingency plans and to submit a different Storm Preparation Check List for each condition set by the Captain of the Port (COTP).[9]

---

[6] 33 C.F.R. § 3.40-156.
[7] *See, e.g.,* Enclosure 14 to SECNOLAINST 3006.11 chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://homeport.uscg.mil/Lists/Content/Attachments/1861/61.%20Enclosure%2014a%20-%20MHCPP_2015_reviewed%202024.pdf (last visited November 5, 2024)
[8] Coast Guard Hurricane Plan, p. 6.
[9] Coast Guard Hurricane Plan, p. 7, 21-24.

The Coast Guard Hurricane Plan states that the Coast Guard will contact waterfront facilities to determine the plans for vessels moored there and individually review those plans.[10]  In conditions Yankee and Zulu, the COTP may close portions of the port and establish a safety zone controlling the movement of vessels.[11]  Barge fleets also are required to review Barge Fleeting: Standard of Care & Streamlined Inspection Program, Section (m), High Water, which includes standards for towboats attending barge fleets.[12]

On August 28, 2021, the COTP for Sector New Orleans issued Marine Safety Information Bulletin Vol. XXI, Issue 58, setting Port Condition Zulu for the Mississippi River from the Sunshine Bridge (Mile 167.5 AHP) to Mile 20 BHP.[13]  This includes the Lower River's fleet at Mile 115.[14]  Effective 1400 local time no vessel movement was authorized.[15]  Fleet boats were allowed to transit light boat (without a tow) only in the area of their fleets to conduct necessary safety checks and respond to emergencies.[16]

---

[10] Coast Guard Hurricane Plan, p. 7.
[11] Coast Guard Hurricane Plan, p. 8-9.
[12] Coast Guard Hurricane Plan, p. 9-10; 33 CFR § 165.803.
[13] https://content.govdelivery.com/accounts/USDHSCG/bulletins/2eed0da (last visited November 5, 2024).
[14] Opinion, p. 5.
[15] Note 13, *supra.*
[16] Note 13, *supra.*

## B.

### Plaintiffs Were Positioned on the River Before ARTCO's Barges Broke Away and Should not Receive Salvage Awards to the Extent that They Were Acting in Their Own Self-Interest

Based on longstanding precedent, the Court should not grant salvage awards to persons who are engaged in actions for their own self-interest.

The three requirements to prove a salvage claim are (1) that the property is subject to a marine peril, (2) that the service is voluntary, and (3) success in whole or part. *The Sabine*, 101 U.S. 384 (1870); 3A *Benedict on Admiralty* § 63 (2024). A salvage service is not voluntary to the extent the alleged salvor's actions are incidental to activities in their own self-interest.

In *Petition of Sun Oil Co.*, 342 F. Supp. 976, 980 (S.D. N.Y. 1972), *aff'd sub nom*, *Sun Oil Co. v. Govostes*, 474 F.2d 1048 (2d Cir. 1973), the *Maumee Sun* collied with the *American Pilot*. The *American Pilot* was imbedded around 25 feet from the stern of the *Maumee Sun* and the ships could not be disengaged safely. *Id.*

Upon completion of lashing, the *American Pilot* maneuvered for approximately ten hours with its bow imbedded in the *Maumee Sun*. *Id.* at 981. The *American Pilot* moved the ships out of the Channel into the deeper water of Buzzard's Bay. *Id.* The Tanker *Senior* came alongside the *Maumee Sun* and lightered the *Maumee Sun* of her fuel oil and cargo. *Id.* With the

permission of the United States Coast Guard, the *American Pilot* then disengaged from the *Maumee Sun*. *Id.*

Because the safety of the *American Pilot* required that she stay imbedded in the *Maumsee Sun*, the plaintiffs' acts were not voluntary, and they were not entitled to a salvage award. *Id.* at 982.

Similarly, in *Merritt & Chapman Derrick & Wrecking Co. v United States*, 274 U.S. 611, 612, 47 S. Ct. 663, 71 L. Ed. 1232 (1927), the claimant had helped to extinguish a fire on a wharf and claimed salvage with respect to the *Leviathan*, which had been moored at the wharf. The claimant, however, did not spay water on the *Leviathan* but claimed to have prevented the fire from spreading from the wharf to the *Leviathan*. *Id.* The Court held that all efforts were directed to extinguishing the fire on the wharf and not the *Leviathan*. *Id.* at p. 613. Whatever benefit resulted to the *Leviathan* was incidental and indirect and cannot sustain a claim in salvage. *Id.*

These cases demonstrate that, to the extent that the Plaintiffs acted to save their own property or property in their custody, they are not entitled to salvage.

Here, in light of the dangers posed by Hurricane Ida, ARTCO's fleet was unattended. In line with the Coast Guard Hurricane Plan, Plaintiffs

remained in their vessels standing by to protect their own fleet.  This is not a case in which salvors left the dock specifically to salvage a vessel in peril.

The district court erred in awarding salvage for all 23 barges rounded up after the storm.  Clearly, Plaintiffs caught and beached many barges for the primary purpose of protecting their own vessels.  Opinion, p. 8.  The district court should have awarded salvage only for instances in which the Plaintiffs proved that they caught and beached barges for the exclusive benefit of ARTCO.[17]

GNOBFA has an interest in preventing salvage awards for activities performed primarily for the self-interest of the salvor.  Pursuant to the Coast Guard Hurricane Plan, when a storm approaches, towboats will be pre-positioned carrying out their responsibilities to their own fleets.  It would be problematic if awards were given to persons on these boats who are primarily protecting their own fleets.

---

[17] While Plaintiffs may be entitled to *quantum meruit* for these services, they are not entitled to a greater award for salvage.  *Cf. Dow Chemical Co. v. Barge M-23B*, 424 F.2d 307, 309-310 (5th Cir. 1970)(Towboat requested to round up breakaway barges was not engaged in salvage.)

## C.

### The District Court Misapplied At Least Three of the Factors that Determine the Amount of the Salvage Award, Most Important Abused its Discretion, and Rendered a Judgement that Will Burden River and Fleet Operators with Excessive Awards

Appellate review of the amount of salvage awards involves (1) *de novo* review of legal issues and (2) determining whether there was an abuse of discretion in setting the amount of the award. The amount of a salvage award may be altered if it is based on incorrect legal principles, a misapprehension of the facts, or is so excessive as to be an abuse of discretion. *Margate Shipping Co. v. M/V J.A. Orgeron*, 143 F. 3d 976, 983-984 (5th Cir. 1998).

Here, the district court committed both legal errors in applying at least three of the salvage factors[18] and, most important, abused its discretion in deciding the amount of the award.

### (i)    Legal Error

The district court properly recited the standards for determining salvage awards. The standards are derived from *The Blackwall*, 77 U.S. 1, 14 (1869), as incorporated and expanded in the ten factors listed in the

---

[18] ARTCO's brief argues that the Court erred on more than three factors.

Salvage Convention.[19]  Opinion, p. 25-26.  The factors are applied without regard to the order in which they are listed.  *Id.*

Factor 1) The salved value of vessel or other property

The district court based it award on a fair market value of $18,807,500 for all 23 ARTCO barges that were moored at the Lower River fleet the morning after Hurricane Ida passed.  Opinion, p. 27-28.  The district court committed legal error because, as noted above, Plaintiffs are not entitled to a salvage recovery for barges that Plaintiffs caught and beached for the primary purpose of protecting their own vessels in the Lower River fleet.  The amount of the salved value should be limited to those barges, if any, that Plaintiffs prove were caught and beached for the primary benefit of ARTCO.

Factor 9) The availability and use of vessels or other
equipment intended for salvage operations and
Factor 10) The state of readiness and efficiency of
the salvor's equipment and the value thereof

The district court misconstrues the purpose and intent of factors 9 and 10.  They were not included in the traditional *Blackwall* factors and were added in the Convention to protect professional salvors.  *Dorthy J v. City of New York*, 749 F. Supp. 2d 50, 53-54 (E.D. N.Y. September 11, 2010).  They

_____

[19] International Convention on Salvage, April 28, 1989, S. Treaty Doc. No. 102-12, 1953 U.N.T.S. 193.

reflect a policy of rewarding professional salvors for their investment in salvage vessels and equipment that are unused most of the time but are needed on short notice when there is a peril. *Sunglory Mar., Ltd. v, PHI, Inc.,* 212 F. Supp. 3d 618, 663 (E.D. La. September 9, 2016); 3A *Benedict on Admiralty* § 237 (2024); *see generally Kentwood Ltd. v. United States*, 930 F. Supp. 227, 233-234 (E.D. Va. 1996), (discussing the special role of professional salvors).

Accordingly, the district court committed an error of law when it held that factor 9 on availability weighted in favor of a substantial award. Opinion p. 45-46. The district court based its ruling on the *Shell Fueler* being the only vessel available. But, as discussed above, the Plaintiffs are not professional salvors. They used the *Shell Fueler* in their own fleeting business and before the storm had already positioned the *Shell Fueler* to protect their own property. This is not an instance of a professional salvor that had invested in equipment specifically intended for use in saving the property of others and that provided a critical service on short notice when a peril arose.

Similarly, the district court committed an error of law when it held that factor 10 on readiness weighed in favor of a substantial award. Opinion p. 45-46. Again, Plaintiffs operated the *Shell Fueler* in their own fleeting business. This is not a case of a professional salvor who maintained

equipment ready especially for the purpose of saving third party vessels in peril.

*(ii)   Abuse of Discretion*

Most significantly, the district court abused its discretion in setting the amount of the award.   An abuse of discretion is a decision that is clearly improper or a plain error or that is not justified by the evidence, a judgment against logic based on the facts found.  *Siquieros v. United States*, 2004 U.S. Dist. LEXIS 16798, 15* (W.D. Tex. July 27, 2004), *affirmed* 124 Fed. Appx. 279, 2005 U.S. App. LEXIS 4774 (5th Cir. March 23, 2005); *Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997). Here, the award of $3,761,500 is plain error, not justified by the evidence, and against logic based on the facts found.

The amount of a salvage award should be more than *quantum meruit* in order to encourage salvors but should not be a windfall.  *Sunglory*, 212 F. Supp. 3d at 666.

> The problem usually is not to award so little as to discourage salvage, nor so much as to encourage unnecessary and exaggerated service …

*The No. 92*, 252 F. 117, 119 (2d Cir. 1918); 3A *Benedict on Admiralty*, § 241 (2024).  **Salvage is not a lottery ticket**.

The district court was heavily influenced by this Court's opinion in *Margate* and determined the amount of the award by reference to *Margate*. Opinion, p. 42-46. The circumstances in *Margate* were truly exceptional. While the award in *Margate* was justified, the district court abused its discretion in equating this case to *Margate*.

In *Margate*, the M/V *Cherry Valley*, the salving vessel, deviated from its course in deep water to respond to a distress call from the Tug *Orgeron*. *Margate*, 143 F. 3d at 981. Here, the *Shell Fueler* was already in position to protect its own fleet. Opinion, p. 6. The *Shell Fueler* never crossed the river to assist vessels that may have been in peril there.

In *Margate*, the *Cherry Valley* was a 688-foot oil tanker, not designed for the task of towing the disabled *Orgeron* and the barge *Poseidon*, which was carrying an external fuel tank for the space shuttle. *Margate*, 143 F. 3d at 981. Here, the *Shell Fueler* is a tug specifically designed for maneuvering river barges. Opinion, p. 4-5.

In *Margate*, the salvage occurred in shoal waters of the Atlantic Ocean; if the *Cherry Valley* had run aground, it likely would have broken up and caused a massive oil spill. *Margate*, 143 F. 3d at 981-82. Here, the Plaintiffs were operating in the area of their own fleet, where they worked routinely. Opinion, p. 8.

In *Margate*, the salvage occurred in heavy seas of the open ocean and required the crew to pass a towing hawser by a line-throwing rocket. *Margate*, 143 F. 3d at 981.  While the *Shell Fueler* faced high winds, it was operating in the inland, protected waters of the Mississippi River. Opinion, p. 10. While pushing barges away with the wheel wash of the *Shell Fueler* required skill, it is a common maneuver for experienced tug captains.

In *Margate*, the *Cherry Valley* held the *Orgeron* and the *Poseidon* against the seas and away from the coast for two days.  *Margate*, 143 F. 3d at 981-82.  Here, the winds had subsided by the next morning.  Opinion, p. 9.

In *Margate,* the district court granted an award of 12% of the salvaged value, which it considered a high percent.  *Margate,* 143 F. 3d at 983.  After this Court adjusted the salved value to $33,000,000, it affirmed an award of 12% or $4,125,000.  *Margate*, 143 F. 3d at 992-93.

Here, the district court determined to make an award less in terms of absolute dollars than the $4,125,000 award in *Margate*.  Opinion, p. 47.  But the district court awarded a far higher percentage than *Margate*: 20% of the $18,807,500 salved value or $3,761,500. Opinion, p. 49.  If 12% is the proper percentage for the extreme situation in *Margate*, here the district court abused its discretion and is clearly in error in awarding 20%.

While the percent awarded has been high in some cases with low salved values, the large salved value here is an additional reason that the percentage awarded should be reduced.  *See Margate,* 143 F. 3d at 993, n. 27; *Allseas Maritime*, 812 F. 2d at 246-47.

If the 20% of the salved value is used as a standard in the future, it will result in outsized, unwarranted awards against river and fleet operators.  The percent awarded by the district court is unreasonable and an abuse of discretion.  Any award here clearly should be less than the 12% in *Margate*. At most the award should be the three to six percent suggested by ARTCO, which still would be a very substantial recovery for Plaintiffs for the salvage services rendered.

## D.

## The Award Encourages Unsafe Behavior

In the words of the *No. 92*, 217 F. at 119, the district court's award will "encourage unnecessary and exaggerated service."

The salvage award here is an outlier, substantially larger than prior awards on the Mississippi River, and will motivate would-be salvors to take undue risks.  If the district court award is confirmed, the next time a storm threatens, would-be salvors will be motivated to go out on the River in hopes of receiving a similar windfall.  These salvors may well be ill-equipped, ill-

trained, and damage the equipment they are intending to save and/or injure themselves or other persons.

Even if these efforts are unsuccessful and no salvage is awarded, river and fleet operators may well suffer losses to their equipment or personnel. Because this award is so large, it will unduly affect the response to future storms and, at a minimum, should be reduced.

VI.

CONCLUSION

GNOBFA filed this *amicus* brief because the district court award is based on legal errors and excessive. It sets an undue and improper standard. If not reversed or reduced, the award will be an incentive for would-be salvors to act recklessly and unsafely whenever a storm approaches.

Salvage should not be a lottery ticket or opportunity for a windfall recovery. Such excessive salvage awards will be a burden on the river and fleeting industry. The district court award is an outlier, and, accordingly, GNOBFA asks this Court to exercise its authority to reverse or reduce it.

Dated: December 20, 2024       Respectfully submitted,

/s/Edward F. LeBreton, III
Jefferson R. Tillery
Edward F. LeBreton, III
JONES WALKER LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170
Phone: (504) 582-8616
jtillery@joneswalker.com

*Counsel for Greater New Orleans Barge Fleeting Association, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2025, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

/s/Edward F. LeBreton, III
Jefferson R. Tillery
Edward F. LeBreton, III
*Counsel for Amicus Curiae*
*Greater New Orleans Barge*
*Fleeting Association, Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 5th Cir. R. 32.2, because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2, this document contains 3,750 words.

This document complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in a size 14-point font Ariel type style.

Dated: December 20, 2024       /s/Edward F. LeBreton, III
                                     Jefferson R. Tillery
                                     Edward F. LeBreton, III
                                     *Counsel for Amicus Curiae*
                                     *Greater New Orleans Barge*
                                     *Fleeting Association, Inc.*