**No. 24-30471**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

NICHOLAS CURRAULT; ANDRÉ CURRAULT; TROY CURRAULT;
LOWER RIVER SHIP SERVICE, LLC; SIDNEY FREEMAN,

*Plaintiffs-Appellees,*

v.

AMERICAN RIVER TRANSPORTATION CO., LLC, in personam,
and thirty-eight ARTCO Barges and their cargo, In rem, doing
business as Artco Fleeting Services,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
Case No. 2:23-cv-02542-WBV-KWR

---

**REPLY BRIEF OF DEFENDANT-APPELLANT**

---

Robert N. Hochman
  *Counsel of Record*
Andrew Rodheim
H. Javier Kordi
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
rhochman@sidley.com

Marcelle P. Mouledoux
Morgan Kelley
MCGLINCHEY SAFFORD, PLLC
601 Poydras Street, Ste. 1200
New Orleans, Louisiana
Phone: (504) 596-2753
mmouledoux@mcglinchey.com

*Counsel for Defendant-Appellant American River Transportation Co., LLC*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**1) Plaintiff-Appellees:**

André Currault, Nicholas Currault, Troy Currault, Sidney Freeman, Lower River Ship Services, LLC

**2) Defendant-Appellant:**

American River Transportation Co., LLC ("ARTCO"), which discloses, pursuant to Federal Rule of Appellate Procedure 26.1, that ARTCO is a wholly owned subsidiary of Archer-Daniels-Midland Company, a publicly held corporation traded on the New York Stock Exchange under the abbreviation "ADM."

**3) Counsel for Plaintiffs-Appellees:**

Thomas M. Flanagan, Andrés F. Holmgren, Matthew Slaughter, FLANAGAN PARTNERS, LLP

Adam Davis,

ADAM DAVIS LAW FIRM

Stephen Huber, Taylor Bologna,

HUBER THOMAS

## 4) Counsel for Defendant-Appellant:

Robert N. Hochman, Andrew F. Rodheim, H. Javier Kordi,

SIDLEY AUSTIN LLP

Kevin M. Frey, Morgan Kelly, Marcelle P. Mouledoux,

MCGLINCHEY STAFFORD, PLLC

Michael McAlpine,

SCHOUEST BAMDAS SOSHEA BENMAIER & EASTHAM


Dated: March 7, 2025            /s/ Robert N. Hochman
                                Robert N. Hochman
                                *Counsel for Defendant-Appellant*
                                *American River Transportation*
                                *Co., LLC*

# TABLE OF CONTENTS

INTRODUCTION...................................................................................1

ARGUMENT ........................................................................................5

    I.    The Specific Intent Requirement—Recognized For
          Over 100 Years—Bars Plaintiffs From Recovery...................5

          A.    Specific Intent Is A Well-Established Feature Of
                 Salvage Law. ...............................................................6

          B.    The District Court Did Not Find That Plaintiffs
                 Acted With The Specific Intent To Salvage
                 ARTCO's Barges............................................................14

          C.    A Specific Intent Requirement Facilitates The Policy
                 Rationales Of Salvage Law. ........................................18

    II.    The District Court Abused Its Discretion And Relied
          On Impermissible Factors In Computing Its
          Salvage Award. ....................................................................20

          A.    The District Court Disregarded Historical Bounds
                 By Comparing The Total Dollar Award In *Margate*
                 To The Award Here.......................................................20

          B.    The District Court's Award Is Based On
                 Legal Errors. ...............................................................24

CONCLUSION ...................................................................................27

CERTIFICATE OF SERVICE...........................................................29

CERTIFICATE OF COMPLIANCE....................................................30

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*The Acorn*,
  1 F. Cas. 56 (C.C.D. Mass. 1857)................................................ 12, 18

*Allseas Maritime, S.A. v. M/V Mimosa*,
  812 F.2d 243 (5th Cir. 1987)................................................. 25, 26, 27

*Am. Petroleum Co. v. The Veendam*,
  46 F. 489 (S.D.N.Y. 1891) ....................................................... 18

*The Apache*,
  124 F. 905 (E.D.S.C. 1903) ..................................................... 19

*Argos Ports (Houston) LLC v. Kirby Inland Marine, LP*,
  598 F. Supp. 3d 512 (S.D. Tex. 2022) .................................... 19

*Atlantis Marine Towing, Inc. v. THE M/V PRISCILLA*,
  491 F. Supp. 2d 1096 (S.D. Fla. 2007).................................... 13

*Ball v. LeBlanc*,
  792 F.3d 584 (5th Cir. 2015)................................................... 18

*Berry v. Boat Giannina B., Inc.*,
  460 F. Supp. 145 (D. Mass. 1978).......................................... 6, 9

*The Blackwall*,
  77 U.S. 1 (1869)...................................................................... 24

*The Carroll*,
  167 F. 112 (4th Cir. 1908) ...................................................... 18

*The City of Columbia*,
  56 F. 252 (S.D.N.Y. 1893) .............................................. 12, 13

*Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co.*,
  974 F.2d 450 (4th Cir. 1992)................................................... 6

*DOROTHY J v. City of New York*,
749 F. Supp. 2d 50 (E.D.N.Y. 2010) ...................................... 10, 24, 25

*Hener v. United States*,
525 F. Supp. 350 (S.D.N.Y. 1981) ....................................................... 6

*Margate Shipping Co. v. M/V JA Orgeron*,
143 F.3d 976 (5th Cir. 1998) ....................................................... *passim*

*Merritt & Chapman Derrick & Wrecking Co. v. United States*,
274 U.S. 611 (1927) ................................................................. 6, 10, 11

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982) .............................................................................. 16

*The San Cristobal*,
215 F. 615 (S.D. Ala. 1914) ................................................................. 6

*The San Cristobal*,
230 F. 599 (5th Cir. 1916) ................................................................ 14

*Petition of Sun Oil Co.*,
342 F. Supp. 976 (S.D.N.Y. 1972) ...................................................... 9

*Sun Oil Co. v. Govostes*,
474 F.2d 1048 (2d Cir. 1973) .............................................................. 9

*Sunglory Maritime, Ltd. v. PHI, Inc.*,
212 F. Supp. 3d 618 (E.D. La. 2016) ............................................... 8, 9

*Westar Marine Servs. v. Heerema Marine Contractors, S.A.*
621 F. Supp. 1135 (N.D. Cal. 1985) ................................................... 26

## Other Authorities

Robert Force, *Elements of "Pure Salvage" Claims*, FJC:
Admiralty & Maritime Law (2d ed. 2013) ............................................ 7

Gilmore & Black,
*The Law of Admiralty* (2d ed. 1975) ............................................ 21, 23

Jessica Victoria Hidalgo, *A Study in Salvage*,
  18 Loy. Mar. L.J. 49 (2019) ................................................................. 7

Michael Kerr, *The International Convention on Salvage—
  How it Came to Be*,
  39 Int'l & Comp. L.Q. 530 (1990) ....................................................... 25

# INTRODUCTION

The parties agree that when a vessel faces imminent peril, and receives successful, voluntary service, salvage law entitles the salvor to a reward from the vessel owner under certain circumstances. The question that divides the parties is: What are those circumstances? To Plaintiffs, a salvage award applies whenever there is some direct physical engagement between the salvor and the defendant's vessel. Plaintiffs' Response Brief ("LR Br.") at 28-30.[1] To ARTCO, a salvage award applies only when the plaintiff acted specifically for the purpose of salvaging the defendant's property. ARTCO Opening Brief ("ARTCO Br.") at 21-36. The consistent case law resolves this dispute: the specific intent to salvage the defendant's vessel is essential to any judgment requiring the defendant to provide a reward to the plaintiff.

Plaintiffs read the cases to reject ARTCO's view only by mischaracterizing ARTCO's position. Plaintiffs repeatedly emphasize that "motive" is never a factor in determining whether a plaintiff is entitled to salvage. LR Br. at 4, 24-32. On that, ARTCO agrees.

---

[1] All "Br." pincites refer to the internal pagination in the document footer.

ARTCO Br. at 22-26. The law does not inquire into *why* the plaintiff decided to offer voluntary service; whether it was for profit, altruistic motives, or other reasons, is beside the point. But the law stretching over 100 years has always asked whether the plaintiff intended to benefit *the defendant's vessel*, not to the exclusion of some other public good or another's private property, but separate from those distinct goals. That is the only way the *defendant* can be required by law to "reward" the plaintiff for its efforts.

So this Court need not concern itself with the colorful narrative Plaintiffs paint in their brief. The facts need not be scoured to determine whether Plaintiffs acted bravely or whether Plaintiffs believed they were doing right by downriver property owners when shoving ARTCO's barges into the bank. Because none of that matters. What matters is whether there is any basis in the trial court's findings or in the record for the view that Plaintiffs pushed ARTCO's barges into the bank to save *ARTCO's* barges. If not, then the law does not and should not force ARTCO to "reward" Plaintiffs for their efforts.

The trial court never made the required finding because the record provides no basis for one. The district court's ruling never says that

2

Plaintiffs acted with a specific intent to salvage ARTCO's property. Rather, the court found that Plaintiffs' intent, at most, went beyond self-preservation and "included an intent to save non-Lower River Property as well." ROA.1064 ¶ 14. A finding of general intent to save more than themselves is precisely what Plaintiffs invited by emphasizing how their actions saved third party "downriver assets." *See, e.g.*, ROA.952-953 ¶¶ 17-19 (Plaintiffs' Proposed Findings of Fact). That is not enough, as a matter of law, to require ARTCO to pay a salvage reward to Plaintiffs.

Moreover, even if some salvage reward were appropriate here, the trial court's determination was excessive as a matter of law. Precedent guides the calculation, as the trial court recognized. But the trial court inexplicably departed from precedent during its calculation. Any comparison of the facts and circumstances regarding the reward in *Margate Shipping Co. v. M/V JA Orgeron*, 143 F.3d 976 (5th Cir. 1998), requires an award here that is significantly *less* as a percentage of salved property than the 12.5% applied there. A *five-fold* difference in time spent and a *fifteen-fold* difference in the value of the salving vessels between this case and *Margate* leave no room for doubt. Yet the

trial court here awarded 20% of the salved property, more than 1.5 times the percentage in *Margate*. Plaintiffs cannot defend the 20% award, and so shift to the improper comparison of *total* dollar values of the award. LR Br. at 44-45. That cannot support the judgment.

The award was also excessive for a separate reason: the district court committed legal error by expanding the two-party "hypothetical negotiation" between salvor and salvee to also include third-party interests. Plaintiffs cite no case in the Fifth Circuit or elsewhere that authorizes such an expansion of the *Blackwall* and Salvage Convention framework, and this Court should not be the first to make a salvee *pay the salvor* for the unspecified and speculative benefits that flowed to the rest of the Mississippi River.

This Court should vacate the district court's holding that Plaintiffs are entitled to a salvage award, or, alternatively, modify the salvage award downward using a 3% to 6% multiplier to comport with historical bounds and settled principles of law.

# ARGUMENT

## I.    The Specific Intent Requirement—Recognized For Over 100 Years—Bars Plaintiffs From Recovery.

All agree that salvage law requires plaintiffs to clear three threshold factors: (1) marine peril, (2) voluntary service, and (3) success. ROA.1060 ¶ 6; ARTCO Br. at 23; LR Br. at 24. Plaintiffs criticize ARTCO for "seek[ing] to add a fourth requirement" to salvage law beyond the three "traditional" elements. LR Br. at 25, 27. But even Plaintiffs concede that these elements are applied with a view to an additional constraint, one that ensures that the law does not produce endless claims of supposed "benefits" provided to vessels in search of substantial, far-reaching "rewards." ARTCO explained in its opening brief how the case law consistently asks whether the plaintiff specifically intended to benefit the vessel owner who is being forced to pay a "reward." ARTCO Br. at 22-36. Plaintiffs offer an alternative view: salvage rewards are limited to those whose vessels receive direct physical aid or contact from the plaintiff. LR Br. at 28-30. So the question now squarely before this Court involves a review of the case law to see who is right. Do the cases stand for Plaintiffs' view of a

"physical directness" requirement, or ARTCO's view of a specific intent requirement?

As discussed in ARTCO's opening brief and below, the concept of specific intent is firmly rooted in the case law, while physical directness is not. And under the specific intent rule, the district court's findings of fact bar Plaintiffs from recovery as a matter of law.

## A. Specific Intent Is A Well-Established Feature Of Salvage Law.

Case law dating back over 100 years recognizes that for plaintiffs to receive compensation for salvage, they must act with the specific "intention ... to save the property involved." ARTCO Br. at 23 (quoting *Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 460-61 (4th Cir. 1992)); *see also, e.g.¸ Merritt & Chapman Derrick & Wrecking Co. v. United States*, 274 U.S. 611, 613 (1927) (no salvage due where "[a]ll effort" was "put forth directly for the purpose of" saving a third party ship); *The San Cristobal*, 215 F. 615, 616 (S.D. Ala. 1914) (salvage actions must have been "designed to relieve" salved vessel from peril), *aff'd* 230 F. 599 (5th Cir. 1916); *Berry v. Boat Giannina B., Inc.*, 460 F. Supp. 145, 149 (D. Mass. 1978) ("designed to rescue"); *Hener v. United States*, 525 F. Supp. 350, 357 (S.D.N.Y. 1981) ("intention ... to

save the property involved").[2] This is not a "slight gloss" on existing factors, as amici Diamond Services Corp et al. suggests. Brief of Amicus Diamond Services Corp., TK Towing, Inc., and TK Boat Rentals, LLC ("Diamond Amici Br.") at 6. Rather, it is a necessary condition Plaintiffs must prove to receive a salvage award.

Plaintiffs attempt to brush aside this case law by mischaracterizing ARTCO's position. Plaintiffs insist that "motive" is irrelevant. LR Br. at 24-30; *see also* Diamond Amici at 8 ("[T]here has never been a requirement for a specific *motive*." (emphasis added)). But a specific intent requirement is *not* a motive requirement, as ARTCO itself explained. *See* ARTCO Br. at 25 (explaining how specific intent

---

[2] *See also* Robert Force, *Elements of "Pure Salvage" Claims*, FJC: Admiralty & Maritime Law 164 (2d ed. 2013) ("The would-be salvor must have the specific intent to confer a benefit on the salved vessel."). Judges Eldon Fallon (E.D. La.), Sarah S. Vance (E.D. La.), and W. Eugene Davis (5th Cir.) reviewed the First Edition of Professor Force's admiralty monograph before publication, which included the same specific intent discussion as in the Second Edition. *Id*. at ix. It should come as no surprise that Professor Force's monograph is cited as authoritative. *See, e.g.*, Jessica Victoria Hidalgo, *A Study in Salvage*, 18 Loy. Mar. L.J. 49, 64 (2019). Plaintiffs' attempt to redefine the "point Professor Force is making" when discussing specific intent should be rejected. LR. Br. at 28. The Professor's choice of words is clear.

"exists alongside the fact that salvors may be motivated by financial gain," which helps explain why professional salvors may recover).

Plaintiffs fail to recognize that *motive* and *intent* are not the same: "motive" describes the *incentives* to act, while "intent" describes the *aims or purposes* for which one acts. *See id*. at 24-26. That distinction explains why the salvors in *Sunglory Maritime, Ltd. v. PHI, Inc.,* 212 F. Supp. 3d 618 (E.D. La. 2016), received a salvage reward despite having no "preexisting motivation" to help the unexpected arrival. LR Br. at 26. After the helicopter landed with smoke emitting from its tail, the ship's crew promptly arrived with fire hoses, secured the helicopter, and later sheltered and fed the crew before "safely transport[ing] the helicopter and [its crew] to shore." *Sunglory*, 212 F. Supp. 3d at 650, 657-58. Thus, it is true that the court in that case had no need to "peer[] into the salvor's mind." Diamond Amici Br. at 11. But that is because the crew's actions left no doubt that they intended to protect the helicopter from further harm.[3]

_____

[3] While the court did not evaluate the salvor's intent, it did analyze whether the crew "acted" at all for purposes of the "voluntary

The Diamond Amici's blanket assertion that no court looks into an alleged salvor's mind when evaluating salvage (*id.*) is wrong. Nobody disputes that service must be "voluntary" to qualify, and that entails, at least to some degree, peering into the mind of the salvor. In truth, the cases "peer into the mind" of the plaintiff in ways no different from common rules that evaluate *mens rea* or intent.

For example, after a bench trial in *Berry v. Boat Giannina B., Inc.*, the court considered what "influenced" the alleged salvor's decision to "not throw the traps overboard." 460 F. Supp. at 148-49. That's a look into the mind. So too in *Petition of Sun Oil Co.*, where the court considered what the pilot aboard the salving ship "believe[d] … to be true" with respect to the circumstances to which his acts were directed. 342 F. Supp. 976, 982 (S.D.N.Y. 1972). In that case, the Second Circuit affirmed the denial of a salvage award because the plaintiff was "acting out of concern for [his own ship's] own safety." *Sun Oil Co. v. Govostes*, 474 F.2d 1048, 1048-49 (2d Cir. 1973) (per curiam).

---

service" element, finding that they did. *Sunglory*, 212 F. Supp. 3d at 650-51.

Finally, the Diamond Amici's reference to *DOROTHY J v. City of New York*, 749 F. Supp. 2d 50 (E.D.N.Y. 2010), as evincing a "significant line of cases" where owners with no knowledge received salvage, is misleading. Diamond Amici at 9.[4] The portions of *DOROTHY J* that Diamond Amici cite involve the apportionment of a salvage award between the owner and crew—not the antecedent determination of whether salvage is due. 749 F. Supp. 2d at 77 ("The owner need not take part in, direct, or even know about the salvage operation, *to share in the award, although such participation or direction may increase the owner's proportionate share.*") (emphasis added to text omitted by Diamond Amici's case quotation at page 10).[5]

---

[4] Plaintiffs too cite *Dorothy J*, but only to support their assertion that salvage awards are available to plaintiffs that "act[] purely out of altruistic motives." LR Br. at 26 (quoting *Dorothy J*, 749 F. Supp. 2d at 76). As discussed above, "motive" is not at issue in this appeal.

[5] Not appreciating the distinction between *intent* and *motive*, Diamond Amici sketch a hypothetical where a captain and mate concerned with environmental or economic harms to themselves or others set out to salvage the J.A. Orgeron, thereby preventing a spill. Diamond Amici Br. at 17. But the ultimate hoped-for result that impels or *motivates* the decision to salvage a vessel is irrelevant. The specific intent rule asks a single question: were the captain or mate's efforts undertaken "for the purpose" of saving the J.A. Orgeron? *Merritt*, 274 U.S. at 613. No doubt, it may be true that the salvors in amici's example

Plaintiffs also err when they read the cases to impose a novel "directness" concept. LR Br. at 28-30. The proposal, upon examination, is both incomplete, and ultimately, supports rather than negates the specific intent rule.

For example, the Supreme Court's concern in *Merritt* was not merely that the alleged salvee received an "indirect" benefit, as Plaintiffs assert. *See id.* at 28. Instead, the problem was that the benefits to the alleged salvee flowed indirectly *from efforts* that were "put forth directly *for the purpose of*" saving a different ship. *Merritt*, 274 U.S. at 613 (emphasis added). That is, what Plaintiffs label as "directness" is really nothing more than a different way of describing a salvor's intent and the resulting benefit. It does not, as Plaintiffs say, impose a "physical[] act[]" or "control" requirement. LR Br. at 30; *see also* Diamond Amici Br. at 14-15 ("actively touch[]"). Instead, it

---

decided to save the vessel to prevent an oil spill. But what matters is they decided to save the vessel; that is, they made it their intended goal to save the vessel. Were there some other safer or more efficient way to prevent the oil spill without saving the vessel, they might have taken that path. But having taken the path that requires the *purposeful act* of saving the vessel, they become entitled to salvage. There is no "unjust" or "borderline-absurd" result in distinguishing between the two. Diamond Amici Br. at 17.

describes the relationship between what the alleged salvor intended to accomplish and what it actually accomplished. That is the "specific intent" rule.

The cases that Plaintiffs believe "have nothing to do with the facts here," LR Br. at 29, make the shortcomings in Plaintiffs' theory plain. In *The Acorn*, the plaintiffs "put out fenders … to lessen the force of the shock" from an imminent collision between their vessel and the alleged salvee vessel. *The Acorn*, 1 F. Cas. 56, 56 (C.C.D. Mass. 1857). There is no doubt the fenders "physically acted," LR Br. at 30, on the other vessel. However, the result in *Acorn* did not turn on the direct physical contact. It turned on the indirectness of the benefit *in relation to the salvors' intent*—which was to protect themselves. *The Acorn*, 1 F. Cas. at 56. The happenstance that the defendant's vessel was *also* saved cannot provide a basis for a salvage reward. Plaintiffs cannot square the outcome in *The Acorn* with their made-for-this-case rule.

The logic of *The City of Columbia* is similar, holding no salvage is due if the benefit to a vessel is "a mere incident in the mode of performing the salvage service undertaken" for another vessel. 56 F. 252, 255 (S.D.N.Y. 1893). There, the defendants' ship benefitted from

12

the removal of a burning ship tied to the same dock. *Id.* at 253. Because the removal was not "an independent act" taken for the defendants' benefit, any benefit received was not the specific intent of the act. That is why salvage was not awarded. *Id.* at 255.

Likewise, the defendant in *Atlantis Marine Towing, Inc. v. THE M/V PRISCILLA* asserted no salvage was owed where the benefit conferred on its yacht, the *Priscilla*, was "incidental to services rendered to" a neighboring yacht that caught fire. 491 F. Supp. 2d 1096, 1101 (S.D. Fla. 2007). Neither party claimed the fire spread to the *Priscilla*, nor that the plaintiffs physically acted on the *Priscilla* in fighting the neighboring fire. *See* Dkt. Nos. 47 at 2 (Def.'s MSJ), 49 at 2-4 (Pltf.'s Opp. to MSJ), in *Atlantis vs. Priscilla*, No. 06-21209-CIV (S.D. Fla). Thus, under Plaintiffs' "directness" or physicality test, the court should have not held a trial to determine whether to issue a salvage reward. But the court ruled that a trial was needed to determine "whether the benefit, if any, conferred upon the *Priscilla*" was "incidental to services rendered" to the other yacht, or "was rendered directly to the *Priscilla*." 491 F. Supp. 2d at 1101. That is, a trial was necessary to determine the specific intent of the salvor—who was it trying to save, *Priscilla* or the

13

other yacht—when it acted. Plaintiffs' cramped "directness" theory cannot account for this ruling either. *See also, e.g.*, *The San Cristobal*, 230 F. 599, 600 (5th Cir. 1916) ("[E]ven direct services rendered in time of danger have not always been recognized as salvage services.").

### B.     The District Court Did Not Find That Plaintiffs Acted With The Specific Intent To Salvage ARTCO's Barges.

The district court did not find the specific intent requirement "would be met here," LR Br. at 32, as it did not find Plaintiffs possessed the specific intent to salvage ARTCO's barges. Instead, after weighing all the evidence, the court found Plaintiffs' intent "went beyond protection of Lower River's property and included an intent to save non-Lower River property as well." ROA.1064 ¶ 14. In the court's view, that finding was supported by "particularly credible" testimony that Plaintiffs' "intent went beyond protecting their own property." ROA.1064-65 ¶ 14.

But as discussed above, that's not enough. Specific intent asks whether the salvor intended to rescue the defendant's vessel, not whether a salvor's intent goes "beyond" self protection. *See* ARTCO Br. at 21-31; *supra* at 6-7. Thus, ARTCO's position is not asking this Court to find the trial court clearly erred when it determined that Plaintiffs

14

acted to benefit *others* beyond themselves. ARTCO's argument is that this finding cannot support the award, and a more specific finding that the Plaintiffs intended to benefit ARTCO's barges is not possible on this record.

This Court owes no deference to Plaintiffs' attempt to recast the district court's factual findings to fit the rubric of specific intent. At this point, no one disputes that, at trial, Plaintiffs "disagree[d]" that they were acting in their own self interest. *See* ROA.1598:17-25 (Sidney Freeman); ROA.1416:19-25 (Troy Currault); ROA.1301:7-12 (Nicholas Currault). The district court heard that testimony first hand—yet, it did not find Plaintiffs *acted to benefit ARTCO.* Nor, evidently, was the district court swayed by Plaintiffs' purported "worr[y]" for ARTCO's barges, LR Br. at 33 (quoting ROA.1300:21-25), nor by trial counsel's attempt to lead Troy Currault to define "the next guy" in a way that defies plain meaning and Nicholas Currault's own recollection of what his father meant. LR Br. at 34-35 (quoting ROA.1393-94); *see* ROA.1206:21-23 ("And [Troy] said to me, if you push them out into the river, the only thing you're doing is F'ing the next guy, you know, *the next guy downriver, you know*.") (emphasis added). Plaintiffs' concern

15

for downriver property (and not ARTCO's property) was made clear at trial, and the district court presumably based its decision on that record—not on Plaintiffs' *post hoc* effort to rewrite the trial court's findings. *See*, *e.g.*, LR Br. at 35 (quoting ROA.1415:9-11) ("*The point was to save barges*, <u>save the barges from going downriver and doing other damage</u> ....") (underlining added; italics indicate Plaintiffs' preferred emphasis as replicated in LR Br. at 35).

Thus, no matter how much Plaintiffs insist they intended to protect the property of other third parties, such a finding—even if supported by substantial evidence—misses the mark on specific intent.

To the extent this Court thinks the district court "failed to make a finding" of specific intent because of its "erroneous view of the law," remand is not necessary where, as here, "the record permits only one resolution of the factual issue." *Pullman-Standard v. Swint*, 456 U.S. 273, 291-92 (1982). One week *before* Plaintiffs filed their verified salvage complaint, in *sworn deposition testimony* for the property damages case arising out of the same events, Troy Currault stated, "we did not do no salvage." ROA.308:25-309:1. Similarly, Nicholas Currault stated in his sworn deposition testimony that he "wasn't looking ... for

other people's stuff" on the night of Hurricane Ida, but was instead worried about his "crew at that time" and "*nobody else*." ROA.1280:7-17 (emphasis added). It is telling that Plaintiffs ignore the deposition testimony—which ARTCO cites in its opening brief (ARTCO Br. at 8)— entirely.

The record permits only one resolution of the facts, which fully comports with the trial court's findings: Plaintiffs' intent, at most, included an intent to save other downriver property but never was aimed at saving ARTCO's barges. *See* ARTCO Br. at 9-13, 37-40; *see also, e.g.*, ROA.1205:15-23, ROA.1220:16-19, 1300:21-1301:1 (Nicholas Currault); ROA.1393:22-25 (Troy Currault); ROA.2276:10-16 (André Currault); ROA.1589:22-24 (Sidney Freeman). As Troy Currault and Sidney Freeman testified, Plaintiffs' actions, unintentionally, "wound up" saving ARTCO barges. ROA.1421:18-20 (Troy Currault); ROA.1609:15-16 (Sidney Freeman). There is no reason to doubt that Plaintiffs' goal of protecting themselves and downriver property would have been fully achieved even if ARTCO's barges were not saved in the process. That ARTCO's barges "wound up" being saved no more requires a salvage award than the fact that *The Acorn* plaintiffs

protected their own vessel "without doing any damage" to the other vessel. 1 F. Cas. at 56.

On this record, a finding of specific intent to save ARTCO's barges is "insupportable as a matter of law," precluding the need to remand for additional fact finding. *Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015). This Court should vacate the salvage claim as a matter of law.

## C.   A Specific Intent Requirement Facilitates The Policy Rationales Of Salvage Law.

The specific intent requirement helps salvage law strike an optimal balance between inducing socially beneficial rescues and mitigating incentives to engage in too much risk or take too little care. ARTCO Br. at 31-36; *see Margate* 143 F.3d at 986 (describing the "'efficient' fee" that balances competing considerations). In arguing that salvage law only tries to "induce" rescue and not to "discourage" risk, LR Br. at 30-32, Plaintiffs fail to appreciate the historical duality of salvage law's competing objectives. *See The Carroll*, 167 F. 112, 113 (4th Cir. 1908) (opining that salvage awards must be "sufficiently liberal" to induce actions, but not excessive "as to deter the vessel in distress from accepting the necessary help on account of its excessive cost"); *Am. Petroleum Co. v. The Veendam*, 46 F. 489, 494-95 (S.D.N.Y. 1891)

18

(opining on "two controlling principles" that guide salvage awards: "induc[ing]" rescues, but not leading distressed vessels "to run unjustifiable risks of life and property rather than incur the cost of salvage assistance").[6]

Like the broader doctrinal structure of salvage law, the specific intent requirement constrains the scope of recovery and thus ensures that the law does not distort incentives by *over*-inducing risky action or *under*-inducing due care by salvors or salvees. ARTCO Br. at 31-36. This is the *same policy rationale* that animates the pre-existing duty exception to voluntaries. *See id.*; *Argos Ports (Houston) LLC v. Kirby Inland Marine, LP*, 598 F. Supp. 3d 512, 517 (S.D. Tex. 2022) (discussing "the reason for th[e] rule"). Neither Plaintiffs nor Diamond Amici discuss—let alone dispute—that the specific intent requirement and the pre-existing duty rule serve the same policy aims in parallel.

---

[6] *See also The Apache*, 124 F. 905, 913 (E.D.S.C. 1903) ("It is the policy of the maritime law to encourage spontaneous services, … [but] it is never the policy of the law, nor in accordance with justice, to allow a situation created by calamity to be converted into an opportunity for extortion.").

**II.    The District Court Abused Its Discretion And Relied On Impermissible Factors In Computing Its Salvage Award.**

The district court erred in two respects when calculating Plaintiffs' salvage compensation. Taken together, these errors warrant modifying the award in the event this Court permits any recovery.

**A.    The District Court Disregarded Historical Bounds By Comparing The Total Dollar Award In *Margate* To The Award Here.**

This Court's decision in *Margate* made it clear that district courts do not have unfettered discretion in computing salvage awards. 143 F.3d at 989. A court's discretion is limited by "historical practice" and the requirement to "account for all of the relevant circumstances of the specific salvage at issue." *Id*. Cases of a "similar nature" should be treated alike, while dissimilar cases should be treated differently. *See id*. at 995.

Even a deferential "general comparison" between Plaintiffs' efforts and past salvage cases confirm the district court abused its discretion. *See id*. at 993. Despite the district court's handwaving, this case is nothing like *Margate*. The five-fold disparity in time-spent (10 hours vs. 56 hours), the fifteen-fold difference in value of the salving vessel ($500,000 vs. $7,500,000), and the substantial environmental

20

liability incurred by the *Margate* salvors, all indicate that *Margate*'s rescue was orders of magnitude greater than this one. *Compare id.* at 985, 988-89, *with* ROA.1088-89 ¶¶ 46-47. Plaintiffs do not even discuss these differences. They instead defend the 20% figure as fitting a "general range," and defend the $3.7 million sum as acceptable for being "just over half" of the *Margate* award. LR Br. at 43-45.

A 20% figure, however, is not "within" the "general range for high value salvage cases." *Id.* at 44. *It is the "upper limit" in high-value cases,* and is surpassed by only one outlier in this Court's compiled "list of the nine largest federal salvage awards … since the advent of the *Blackwall* rule." *Margate*, 143 F.3d at 993, 995 n.28 (citing Gilmore & Black, *The Law of Admiralty* 563 (2d ed. 1975)); *see* ARTCO Br. at 42-43. Thus, to justify an award of this magnitude, the trial court would have had to explain why it, too, warrants a substantial outlier from historical practice. Instead, the court believed this case was comfortably within the range of ordinary cases, which means that, if the award is allowed to stand, it will have set a new floor for salvage awards.

Moreover, the court's choice of percentage cannot be justified by reference to the absolute dollar amount awarded, as Plaintiffs argue.

LR Br. at 44-45. That is contrary to this Court's jurisprudence. The Fifth Circuit observes that *higher* percentages are appropriate for "property of comparatively low value," while *lower* percentages are appropriate "for property of high value." *Margate*, 143 F.3d at 993 n.27. Based on this inverse relation, a *lower percentage* should have been used where Plaintiffs salved ARTCO's "relatively higher-value property" (as Plaintiffs put it, LR Br. at 42). Plaintiffs try to get around this principle through sleight-of-hand, arguing, for purposes of the percentage, that ARTCO's property is "worth less" than the property in *Margate,* justifying a "higher percentage" of 20%. LR Br. at 44. But Plaintiffs cannot have it both ways, arguing ARTCO's property is "high value" when it suits them and "worth less" when it does not.

Here, the district court chose "the largest maritime salvage award in recorded history" as the baseline for its analysis. *Margate,* 143 F.3d at 979-80. Focusing on the absolute dollar amount awarded (instead of the choice of percentage) obfuscates the fact that *any* amount less than the "largest ever awarded" can be defensible on that basis. But if that were a proper justification, then every salvage award that is "not the largest in history" can be justified. Percentages, in contrast,

22

provide an in-kind comparison across cases, as this Court recognized in *Margate*. *Id.* at 994-95.

In short, the district court's findings do not support an especially high risk posed either to Plaintiffs or their vessel, nor a salving vessel of considerable value. It was therefore an abuse of discretion to allow more than 1.5 times the *Margate* percentage and arrive at a figure that maritime scholars have identified as the "upper limit" in high value cases. *Id.* at 995 n.28 (citing Gilmore & Black, *supra*, at 563). Given the record and the court's findings, and when compared to historical data, this case warrants an award between 3% to 6% of the value of ARTCO's barges, and no more. *See* ARTCO Br. at 45-46 (analyzing past cases).[7]

---

[7] Plaintiffs also argue the award is justified because, as they put it, ARTCO's contractors' "refus[al] to step in to assist" while working for "regular pay" confirms "a company in ARTCO's position" would have had to pay "much more" for assistance. LR Br. at 42-43. That's irrelevant. Salvage awards "encourage rescues in settings of high transaction costs by simulating the conditions and outcomes of a competitive market," resulting in compensation "priced at a competitive level." *Margate*, 143 F.3d at 986. Salvage awards are not meant to replicate the monopoly price, as Plaintiffs suggest. If salvage awards were priced at high-transaction-cost monopoly levels, there would be no point of salvage law.

**B.    The District Court's Award Is Based On Legal Errors.**

Apart from the district court's abuse of discretion, it also committed legal errors when applying the various factors intended to replicate a "voluntary" two-party "negotiation in an open and competitive market." *Margate*, 143 F.3d at 986. Instead of limiting its analysis to the "the twin considerations" of cost to the salvor and benefit to the salvee, *id.* at 986-87, the court added a third party to the negotiating table, effectively up-charging ARTCO for the unspecified benefits enjoyed by "the rest of the Mississippi River." ROA.1073 ¶ 29(c).

Plaintiffs are wrong that such an approach is "consistent with the law." LR Br. at 46. All agree that, in calculating a salvage award, the court should consider the factors introduced by the Supreme Court in *The Blackwall*, 77 U.S. 1 (1869), and "essentially adopted" by the 1989 Salvage Convention, ROA.1069 ¶ 25; *see also* ARTCO Br. at 41; LR Br. at 39. Critically, "[t]he Salvage Convention does not include as a factor warranting consideration the concept of 'liability salvage,' namely that salvors should be entitled to additional remuneration for having relieved shipowners from liability to third parties." *DOROTHY J*,

749 F. Supp. 2d at 71. Indeed, such a factor was "explicitly considered and rejected" by the Salvage Convention drafters "because of the difficulty and raw unpredictability involved in estimating the monetary value of a reduction in liability." *Id.* Considering third-party liability would have required finders of fact "to determine what, if any, liability would or might have been incurred, presumably on a balance of probability, by the shipowners but for the salvors' efforts, and if so, to make some assessment of the amount of the avoided liability." *Id.* (quoting Michael Kerr, *The International Convention on Salvage—How it Came to Be*, 39 Int'l & Comp. L.Q. 530, 537 (1990)).[8] This "would have been wholly alien to the spirit and practice of the law of salvage." Kerr, *supra*, at 538.

    *Allseas Maritime, S.A. v. M/V Mimosa*, 812 F.2d 243 (5th Cir. 1987) is not to the contrary. In *Allseas*—a case that predates the 1989 Salvage Convention—this Court, in dicta, stated that a salvor's

---

[8] Plaintiffs' attempt to distinguish *DOROTHY J.* (LR Br. at 47 n.198) falls flat. Contrary to Plaintiffs' suggestion otherwise, the court was not considering "remuneration" in some sort of abstract way, but rather, was considering whether avoidance of liability should be a factor considered when calculating a salvage award.

contribution to third parties "*should* be recognized" in a salvage award. *Id.* at 247 (emphasis added). But *Allseas* was about whether salvage awards can account for avoidance-of-liability, which may be viewed as an "economic benefit[]" to the salvee. *Id.* And, ultimately, the Fifth Circuit *declined* to account for such a benefit, deeming it incompatible with the limited liability regime. *Id.* Notably, the Fifth Circuit's decision to exclude avoidance-of-liability was not animated solely by a concern that such an award may "exceed the value of the vessel," as Plaintiffs suggest. LR Br. at 47. Instead, the Fifth Circuit also barred avoidance-of-liability recovery because it is not part of the salved property. *Allseas*, 812 F.2d at 247 (citing *Westar Marine Servs. v. Heerema Marine Contractors, S.A.*, 621 F. Supp. 1135, 1140-41 (N.D. Cal. 1985) (holding "prevention of liability" is not an "aspect of the value of the property salved")).

The same logic indicates that third party benefits cannot factor into a salvage award. Any benefits received by "the rest of the Mississippi River" are not benefits to ARTCO nor costs to Plaintiffs. The district court's finding made it clear that the benefits to the Mississippi River are different from the benefits to ARTCO. ROA.1073 ¶ 29(c). The

26

point of the hypothetical negotiation construct that guides salvage awards is to allow the court to isolate the costs and benefits to the parties. *See Margate*, 143 F.3d at 986. Importing third-party interests into the negotiation violates the premise of the exercise and encourages lottery-like rewards that distort incentives.

No case allows the district court to order ARTCO pay for unspecified third-party benefits by paying money to Plaintiffs. And because the value of third-party benefits might readily exceed the value of the salved vessel, *Allseas* would reject it. *See Allseas*, 812 F.2d at 247.

## CONCLUSION

This Court should reverse the award and order entry of judgment in favor of ARTCO, or, in the alternative, reduce the award using a percentage of no more than between 3% and 6% to stay within historical bounds.

March 7, 2025

Respectfully submitted,

*/s/ Robert N. Hochman*

Robert N. Hochman
  *Counsel of Record*
Andrew F. Rodheim
H. Javier Kordi
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
rhohcman@sidley.com
Phone: (312) 853-7000

Marcelle P. Mouledoux
Morgan Kelley
MCGLINCHEY SAFFORD, PLLC
601 Poydras Street, Ste. 1200
New Orleans, Louisiana
Phone: (504) 596-2753
mmouledoux@mcglinchey.com

*Counsel for Defendant-Appellant
American River Transportation Co.,
LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2025, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

Dated: March 7, 2025

*/s/ Robert N. Hochman*
Robert N. Hochman

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 5th Cir. R. 32.2, because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2, this document contains 5,587 words.

This document complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in a size 14-point font Century Schoolbook type style.

Dated: March 7, 2025

*/s/ Robert N. Hochman*
Robert N. Hochman