No. 24-30471

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**NICHOLAS CURRAULT; ANDRÉ CURRAULT; TROY CURRAULT; LOWER RIVER SHIP SERVICE, LLC; SIDNEY FREEMAN,**

*Plaintiffs-Appellees*,

v.

**AMERICAN RIVER TRANSPORTATION COMPANY, LLC,** *IN PERSONAM,* **AND THIRTY-EIGHT ARTCO BARGES AND THEIR CARGO,** *IN REM,* **DOING BUSINESS AS ARTCO FLEETING SERVICES***,*

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Louisiana
Case No. 2:23-cv-02542-WBV-KWR

## APPELLANT'S PETITION FOR HEARING *EN BANC*

Marcelle P. Mouledoux
Morgan E. Kelley
McGlinchey Stafford, PLLC
601 Poydras St., 12th Floor
New Orleans, LA 70130
Telephone: (504) 586-1200
Facsimile: (504) 596-1800
mmouledoux@mcglinchey.com

*ATTORNEYS FOR DEFENDANT-APPELLANT*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**1. Plaintiffs-Appellees:**

André Currault, Nicholas Currault, Troy Currault, Sidney Freeman, Lower River Ship Services, LLC

**2. Defendant-Appellant:**

American River Transportation Co., LLC ("ARTCO"), which discloses, pursuant to Federal Rule of Appellate Procedure 26.1, that ARTCO is a wholly owned subsidiary of Archer-Daniels-Midland Company, a publicly held corporation traded on the New York Stock Exchange under the abbreviation "ADM."

**3. Counsel for Plaintiffs-Appellees:**

Thomas M. Flanagan
Anders F. Holmgren
Matthew R. Slaughter
FLANAGAN PARTNERS, LLP
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
(504) 569-0235

Adam N. Davis
ADAM DAVIS LAW FIRM
22398 LA-435
Abita Springs, Louisiana 70420
(504) 553-1435
ad@adamdavislawfirm.com

Stephen M. Huber
Taylor M. Bologna,
HUBER THOMAS
1100 Poydras Street, Suite 2200
New Orleans, Louisiana 70163
(504) 274-2500
stephen@huberthomaslaw.com
taylor@huberthomaslaw.com

4. **Counsel for Defendant-Appellant:**

Robert N. Hochman[1]
Tacy F. Flint
Andrew F. Rodheim
H. Javier Kordi,
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
tflint@sidley.com
arodheim@sidley.com
jkordi@sidley.com

Marcelle P. Mouledoux
Kevin M. Frey
Morgan E. Kelley
McGLINCHEY STAFFORD, PLLC
601 Poydras Street, Suite 1200
New Orleans, Louisiana 70130
(504) 596-2755
mmouledoux@mcglinchey.com

---

[1] At the time of this filing, Robert N. Hochman is no longer with the firm Sidley Austin.

kfrey@mcglinchey.com
mkelley@mcglinchey.com

Michael L. McAlpine
SCHOUEST BAMDAS SOSHEA BENMAIER & EASTHAM
365 Canal Street, Suite 2450
New Orleans, Louisiana 70130
(504) 561-0323
mmcalpine@sbsb-eastham.com

5. Greater New Orleans Barge Fleeting Association, Inc. ("GNOBFA")
   *Amicus in Support of Defendant-Appellant*

6. Jefferson R. Tillery
   Edward F. LeBreton, III
   JONES WALKER, LLP
   *Counsel for GNOBFA*

7. Diamond Services Corporation
   *Amicus in support of Plaintiffs-Appellees*

8. TK Towing, Inc.
   *Amicus in support of Plaintiffs-Appellees*

9. TK Boat Rentals, LLC
   *Amicus in support of Plaintiffs-Appellees*

10. Harry Morse
    BOHMAN MORSE
    *Counsel for amici Diamond Services Corporation, TK Towing, and TK Boat Rentals*

11. Cayce Peterson
    JJC LAW LLC
    *Counsel for amici Diamond Services Corporation, TK Towing, and TK Boat Rentals*

iv

12. Ian Taylor
    LEWIS KULLMAN STERBCOW ABRAMSON
    *Counsel for amici Diamond Services Corporation, TK Towing, and TK Boat Rentals*


Dated: December 22, 2025          /s/ *Marcelle P. Mouledoux*
                                  Marcelle P. Mouledoux
                                  *Counsel for Defendant-
                                  Appellant American River
                                  Transportation Co., LLC*

## STATEMENT OF ISSUES MERITING
## *EN BANC* CONSIDERATION

Because this matter raises a question of exceptional importance, pursuant to FRAP 40(b), ARTCO respectfully requests *en banc* consideration in order to secure and maintain uniformity of the Court's decisions, to follow Supreme Court precedent, to prevent a circuit split with rulings of the U.S. Supreme Court and the Second Circuit, and to prevent the undermining of the public policy that underpins the law of salvage. The issue is:

**Can a party who performs an inadvertent salvage, without the specific intent to confer a benefit on the property, recover a salvage award?**

The panel's decision conflicts with Supreme Court precedent on the requirements to recover a maritime salvage award under *Merritt & Chapman Derrick & Wrecking Co. v. United States,* 274 U.S. 611, 611-13 (1927) (denying a salvage award when any benefit to third-party property by a would-be salvor was "inadvertent" and "incidental").

The panel's decision also deviates both from this Circuit's precedent in *The San Cristobal*, 230 F. 599, 599 (5th Cir. 1916), aff'ing, 215 F. 615, 616 (S.D. Ala. 1914) (affirming denial of recovery for a would-be salvor where "no effort or offer was made to render any" service to the allegedly salved vessel) and from the Second Circuit's opinion in *Sun Oil Co.*, 474 F.2d 1048 (2d Cir. 1973), aff'ing, 342 F. Supp. 976, 980 (S.D.N.Y. 1972). (affirming the district court's denial of a salvage award

vi

when the would-be salvors acted only out of concern for their own safety but, in the process, conferred a benefit on a third-party's property).

This ruling raises an exceptional public policy issue. Requiring that the salvor possess specific intent to protect the salved vessel furthers the public policy underpinning salvage law. Ignoring that requirement encourages undue litigation by allowing recovery for "rescues" not intended to protect the rescued vessel but rather protect the salvor's own property and the properties of unknown others downstream.

This ruling will also adversely impact the maritime industry at large and encourage dangerous behavior. The award of over $3.7 million dollars, which is now one of the highest salvage awards in history, will improperly encourage mariners to seek opportunities for similar rewards, imperiling themselves and first responders. Drawing vessels toward danger for uncertain, but potentially blockbuster, awards is not consistent with the policies salvage law serves.

For these reasons, ARTCO seeks an *en banc* hearing.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS…………………………………ii

STATEMENT OF ISSUES MERITING
PANEL RECONSIDERATION AND
*EN BANC* CONSIDERATION……………………...…………………………..vi

TABLE OF AUTHORITIES………………………………………………………ix

I.    STATEMENT OF THE FACTS,
      COURSE OF PROCEEDINGS,
      AND DISPOSITION OF THE
      CASE…………………………………………………………….…………...……1

II.   ARGUMENT AND AUTHORITIES……………………….....…..……….....4

      2.1   THE OPINION CONFLICTS
            WITH RULINGS OF THE
            SUPREME COURT AND
            THIS CIRCUIT…………………………………………...………4

      2.2   THE PANEL OPINION ALSO
            CONFLICTS WITH RULINGS
            OF THE SECOND CIRCUIT…………………………………… 6

      2.3   THE PANEL'S OPINION
            RECOGNIZED THAT INTENT
            IS NOT IRRELEVANT, AND AN
            *EN BANC* REVIEW
            IS NEEDED TO CLARIFY THE LAW……………….…………...7

III.   CONCLUSION…………………………………………...…………..11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantis Marine Towing, Inc. v. THE M/V PRISCILLA*,
   491 F. Supp. 2d 1096 (S.D. Fla. 2007) .................................................................. 8

*Bommarito v. Belle Chasse Marine Transportation, L.L.C.*,
   159 F.4th 297 (5th Cir. 2025) ............................................................................... 3

*Margate Shipping Co. v. M/V JA Orgeron*,
   143 F.3d 976 (5th Cir. 1998).................................................................... 8, 10, 11

*Merritt & Chapman Derrick & Wrecking Co. v. United States*,
   274 U.S. 611 (1927) ........................................................................... vi, 4, 5, 6, 8

*Petition of Sun Oil Co.*,
   342 F. Supp. 976 (S.D.N.Y. 1972)............................................................ vii, 6, 7

*R.M.S. Titanic, Inc. v. Haver*,
   171 F.3d 943 (4th Cir. 1999).................................................................................. 8

*Robins Dry Dock & Repair Co.*,
   275 U.S. 303 (1927) ............................................................................................... 9

*State of La. ex rel. Guste v. M/V TESTBANK*,
   752 F.2d 1019 (5th Cir. 1985).............................................................................. 10

*Sun Oil Co. v. Govostes*,
   474 F.2d 1048 (2d Cir. 1973).......................................................................... vi, 6

*The City of Columbia v. The City of Atlanta*,
   56 F. 252 (S.D.N.Y. 1893) ..................................................................................... 5

*The San Cristobal*,
   230 F. 599 (5th Cir. 1916)....................................................................... vi, 5, 6, 8

*The San Cristobal*,
   215 F. 615, 616 (S.D. Ala. 1914)……………………………………..………vi, 5, 6

**Other Authorities**

Edward J. Murphy James T. Brown James T. Liston, *Admiralty Law*,
  22 Tex. Tech L. Rev. 365 (1991) ........................................................... 11

Landes and Posner, *Salvors, Finders, Good Samaritans, and Other Rescuers: an
  Economic Study of Law and Altruism*,
    7 Journal of Legal Studies 83 (1978) .................................................. 8

Robert Force, *Elements of "Pure Salvage" Claims*, FJC:
  Admiralty & Maritime Law (2d ed. 2013) ....................................... 5, 9

Alvin B. Rubin, *The Admiralty Case on Appeal in the Fifth Circuit*,
  43 La. L. Rev. 869 (1983)……………………………………………………11

# I.
## STATEMENT OF THE FACTS, COURSE OF PROCEEDINGS, AND DISPOSITION OF THE CASE

As Hurricane Ida made landfall in Louisiana, ARTCO's barges on the Mississippi River were upstream of the property and fleet of plaintiff Lower River Ship Services ("Lower River"), a marine construction company that also owns vessels.[2] Multiple ARTCO barges broke away from their moorings and drifted downstream towards Lower River.[3]

Nicholas Currault, Troy Currault, André Currault, and Sidney Freeman (all plaintiffs along with Lower River, collectively "Plaintiffs") remained at the Lower River facilities during the storm and its aftermath to protect Lower River's operations and property.[4] After one of ARTCO's breakaway barges damaged one of Lower River's vessels, Plaintiffs decided to protect Lower River's property by beaching ARTCO's barges on the downstream riverbank.[5] Plaintiffs testified that they acted to protect Lower River's property and the downstream property of unnamed others.[6]

---

[2] ROA.1045-46 ¶¶ 1-5.
[3] ROA.1049 ¶¶ 17-18.
[4] *See, e.g.*, ROA.1160:23-25.
[5] ROA.1064 ¶ 14.
[6] *See, e.g.*, ROA.1161:19-1162:5; ROA.1421:12-20; ROA.1608:9-12, 1609:13-16, ROA.1205:15-23.

Plaintiffs never testified that they acted to protect ARTCO's barges. They stated that, at best, their actions "wound up" saving ARTCO's barges.[7] Ultimately, the district court found Plaintiffs beached 23 ARTCO barges.[8]

Originally, all the plaintiffs (except Sidney Freeman) filed a suit against ARTCO seeking recovery for damages to Lower River's property allegedly caused by ARTCO's barges.[9] After that suit had been pending for more than a year, Plaintiffs filed this salvage action, which was consolidated with the property damage suit.[10] Once the property damage suit settled, this salvage action was the only claim that remained against ARTCO.[11]

In the salvage action, the district court held that Plaintiffs proved three elements for a salvage claim (marine peril, voluntary service, and success).[12] The district court, however, rejected ARTCO's argument that a salvage award could not be made unless Plaintiffs proved a specific intent to protect ARTCO's barges. Instead, the district court held that "a finding of intent" was not "necessary in order for a court to make a finding of salvage" and that such a requirement is "not [] supported by the law."[13] Rather than finding specific intent, or any intent to protect

---

[7] ROA.1609:15-16.
[8] ROA.1051 ¶ 26.
[9] ROA.1043-44 ¶ 1.
[10] ROA.10-17.
[11] ROA.1044 ¶ 2.
[12] ROA.1065.
[13] ROA.1064, ¶14

ARTCO's barges, the district court ruled, in the alternative, that if *some* intent was required, the "intent" was to protect the property of unnamed others downstream.[14]

On appeal, this Circuit's panel held that no intent to protect the salvee's property is necessary to the salvage action *in this case*, using an abuse-of-discretion standard,[15] rather than the *de novo* review mandated when reviewing an issue of law.[16] The panel's opinion left open the possibility that intent might be required in other cases: "We express no opinion on whether a party's lack of intent might bar a salvage action under materially different circumstances."[17] The panel set forth no criteria by which intent might be judged and when it is (or is not) relevant, leaving no guidance for lower courts.

The panel also affirmed the district court's calculation of the damage award, over $3.7 million.[18]

---

[14] ROA.1064, ¶14

[15] *Currault v. ARTCO*, No. 24-30471, at *3-4 (5th Cir. Dec. 8, 2025).

[16] *Bommarito v. Belle Chasse Marine Transportation, L.L.C.*, 159 F.4th 297 (5th Cir. 2025).

[17] *Currault v. ARTCO*, No. 24-30471, at *n.1 (5th Cir. Dec. 8, 2025).

[18] *Currault v. ARTCO*, No. 24-30471, at *6-8 (5th Cir. Dec. 8, 2025).

## II.
## ARGUMENT AND AUTHORITIES

### 2.1   THE OPINION CONFLICTS WITH RULINGS OF THE SUPREME COURT AND THIS CIRCUIT

The Supreme Court's 1927 decision in *Merritt*[19] held that plaintiffs were not entitled to a salvage award because they did not intend to confer a benefit on the allegedly salved property. A fire broke out on Pier 5, where a ship owned by defendants was moored.[20] Plaintiffs successfully extinguished the flames and then sought a salvage award for defendants' ship.[21] The Supreme Court rejected the claim, holding that the plaintiffs acted "for the purpose of extinguishing fire at and about Pier 5, and to save property not at all related to the [defendants' ship]."[22] While the defendants' ship might have benefited from being relieved of a potential conflagration, the benefit was too "incidental and indirect" to qualify as an act of salvage.[23]

*Merritt* cannot be distinguished on the basis that the fire occurred on the pier and not on the ship. The crux of the *Merritt* ruling was that there was no action by the purported salvor that was specifically designed to save the vessel and, thus, no

---

[19] *Merritt & Chapman Derrick & Wrecking Co. v. United States*, 274 U.S. 611, 613 (1927).
[20] 274 U.S. 611, 611-12.
[21] 274 U.S. 611, 613.
[22] 274 U.S. 611, 613.
[23] 274 U.S. 611, 613.

salvage award was recoverable because "whatever the aid or benefit resulting to her, it was incidental and indirect."[24]

*Merritt* cited two cases with approval as examples of non-recoverable incidental benefits, *The City of Atlanta* and *The San Cristobal*.[25] *The City of Atlanta* court declined to award salvage to tugs that pulled a burning ship away from a second ship, for which the salvage claim was made.[26] It acknowledged that removing first ship from the second ship provided "only an indirect benefit, not a direct service to [the second ship]."[27]

This Circuit deployed similar reasoning in *The San Cristobal*,[28] whose district court opinion was cited with approval in *Merritt* before this Circuit affirmed the lower court.[29] In *The San Cristobal*, no salvage award was given for efforts that extinguished a fire raging 75 feet away from ship in dry dock because "so far as the San Cristobal was concerned, the services were indirect."[30] In other words, while the ship benefitted because the fire was quenched, the intent of the alleged salvor was

---

[24] 274 U.S. 611, 613. *see also* Robert Force, *Elements of "Pure Salvage" Claims*, FJC: Admiralty & Maritime Law 164 (2d ed. 2013) 2004 WL 2895915 (citing *Merritt* as support for the statement, "The would-be salvor must have the specific intent to confer a benefit on the salved vessel.").

[25] 274 U.S. 611, 613, citing *The City of Columbia v. The City of Atlanta*, 56 F. 252 (S.D.N.Y. 1893) and *The San Cristobal*, 215 F.615 (S.D. Ala. 1914), *aff'd*, 230 F. 599 (5th Cir. 1916).

[26] *The City of Columbia v. The City of Atlanta*, 56 F. 252, 254 (S.D.N.Y. 1893).

[27] *The City of Columbia v. The City of Atlanta*, 56 F.2d 252, 254.

[28] *The San Cristobal*, 230 F. 599 (5th Cir. 1916).

[29] 274 U.S. 611, 613, citing *The City of Columbia v. The City of Atlanta*, 56 F. 252 (S.D. N.Y. 1893) and *The San Cristobal*, 215 F.615 (S.D. Ala. 1914).

[30] 230 F. 599, 599.

not to save the ship but to prevent damage to the property that was on fire—the benefit to the ship was only incidental and salvage was unrecoverable.

*Merritt, The City of Atlanta,* and *The San Cristobal* are directly pertinent. Here, the only purpose that the plaintiffs demonstrated was protection of their own property and the property of unnamed others downstream. But preventing damage to the property of others is not the purpose of the admiralty law of salvage. Salvage focuses on the intended benefit to the vessels for which a salvage award is sought, and the incidental benefits that *Merritt, The City of Atlanta,* and *The San Cristobal* rejected for salvor claims demonstrates that the intent of the salvor must play a role.

## 2.2    THE PANEL OPINION ALSO CONFLICTS WITH RULINGS OF THE SECOND CIRCUIT

The Second Circuit also rejected a salvage claim when the salvors were "acting out of concern for" the safety of their own ship, not the vessel for which they were seeking salvage damages. In *Sun Oil*[31] a collision embedded a freighter into a tanker. The freighter sought a salvage award against the tanker because the freighter's captain lashed both vessels together to prevent the freighter from

---

[31] *Sun Oil Co. v. Govostes*, 474 F.2d 1048 (2d Cir. 1973), *aff'ing*, 342 F. Supp. 976, 980 (S.D.N.Y. 1972).

sinking.[32] The court rejected the salvage claim, holding that the freighter acted to protect itself.[33]

While the precise issue in *Sun Oil* involved whether the freighter's actions were "voluntary," the opinion conflated voluntariness with specific intent; it was clear the freighter's captain had no intent to aid the tanker but was rather acting to aid only the freighter and its crew.[34] Thus, *Sun Oil* fully supports ARTCO's request for an *en banc* hearing.

## 2.3   THE PANEL'S OPINION RECOGNIZED THAT INTENT IS NOT IRRELEVANT, AND *EN BANC* REVIEW IS NEEDED TO CLARIFY THE LAW

The panel's opinion specifically noted that intent may indeed need to be proven in some cases: "We express no opinion on whether a party's lack of intent might bar a salvage action under materially different circumstances." [35] This concession, without any standards, will leave district courts adrift.

It is appropriate, as the leading admiralty Circuit in the country, that this Court set forth the standards by which intent is to be proven and evaluated, for only in that way will lower courts be able to clearly distinguish between non-recoverable salvage claims actions that only incidentally benefit a vessel from recoverable salvage

---

[32] *Petition of Sun Oil Co.*, 342 F. Supp. 976, 980.
[33] 342 F. Supp. 976, 982.
[34] 342 F. Supp. 976, 982.
[35] *Currault v. ARTCO*, No. 24-30471, at n.1 (5th Cir. Dec. 8, 2025).

claims. For example, in *Atlantis Marine*, the court rejected summary judgment motions and required a trial to determine whether a salvage award should be given for extinguishing a fire on an inflatable tender tied to the stern of a yacht, the question being whether the fire extinguishment efforts were incidental to the services rendered to the yacht or were rendered directly to the vessel.[36] It was the intent of the salvor that was key—was it trying to save only the tender, or was it directly trying to save the yacht? Further, as this Circuit stated in *The San Cristobal*, even "direct services rendered in time of danger have not always been recognized as salvage services."[37]

The policy reason for requiring specific intent is that, however commendable the purported salvor's actions may have been, salvage is a special remedy that is not available to everyone who acts commendably. The purpose of salvage law is to reward those who, in the face of danger at sea, rescue *property* that is at peril. If the actions only incidentally protect a vessel, salvage is not available, as shown by *Merritt*, *The City of Atlanta*, and *The San Cristobal*.

As stated in a law review article cited by this Circuit in its *Margate* opinion, a salvage claim arises when "the ship suffers some calamity necessitating rescue."[38]

---

[36] *Atlantis Marine Towing, Inc. v. THE M/V PRISCILLA*, 491 F. Supp. 2d 1096 (S.D. Fla. 2007).
[37] *The San Cristobal*, 230 F. 599, 600.
[38] *See* Landes and Posner, *Salvors, Finders, Good Samaritans, and Other Rescuers: an Economic Study of Law and Altruism*, 7 Journal of Legal Studies 83, 100 (1978), an article cited with approval in *Margate Shipping Co. v. M/V JA Orgeron*, 143 F.3d 976, 986 (5th Cir. 1998) as well as in *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 962 (4th Cir. 1999).

It is the intended (and not incidental) benefit to the ship that is crucial, and that requires inquiring into the intent of the salvor.[39]

Without this Court's clarification of the specific intent rule, and in an era of increasingly strong hurricanes descending on the area covered by this Circuit, district courts will be flooded with cases where mariners who act to stop potentially cascading disasters could seek salvage awards from a practically endless string of supposed salvees. It can be foreseen that any person who uses their fleet to stop a breakaway vessel from hitting their dock and drifting downriver could later seek salvage compensation from not only the vessel owner but also everyone downriver—even if the purpose of diverting the breakaway vessel was not to protect the breakaway vessel or downriver property, but rather the salvor's own dock and fleet.

Similar concerns appear in other areas of maritime law. For example, the *Robins Dry Dock* rule[40] states that a party cannot recover purely economic damages (like lost profits) from a negligent party unless they also suffered physical damage. In the context of maritime casualties, where a domino effect of damages may result from a single incident, this ruling was significant. This Circuit later extoled the utility of this limitation, stating that lines needed to be drawn, otherwise "no

---

[39] Robert Force, *Elements of "Pure Salvage" Claims*, FJC: Admiralty & Maritime Law 164 (2d ed. 2013).

[40] *Robins Dry Dock & Repair Co.*, 275 U.S. 303, 308-09 (1927).

determinable measure of the limit of foreseeability would precede the decision on liability," and the "bright line rule . . . has the virtue of predictability" even if it creates results "that are said to be 'unjust' or 'unfair.'"[41]

Ultimately, the requirement of specific intent provides courts with a practical rule to differentiate compensable salvage claims from non-compensable ones (even if driven by other urgent needs) but where any salving effect is incidental. Without clarification of the intent issue, this ruling adversely impacts the maritime industry.

This is particularly true in light of the excessive size of the award in this case. The Court affirmed an award of 20% of the salved property's value.[42] Yet, for the highest salvage award in history, this Court affirmed an award based on 12.5% of the salved property's value.[43] In *Margate*, this Court affirmed the "district court's specific choice of percentage . . . because it [was] consistent with the historical pattern in cases of similar nature."[44] Applying that percentage— 12.5%—to a modified salved property value yielded an award of $4.125 million.[45]

When the district court in this matter looked for guidance from prior cases, it correctly observed that the circumstances of this case warranted an award *lower* than that approved in *Margate*.[46] Yet the district court, affirmed by the panel's ruling,

---

[41] *See State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1028-29 (5th Cir. 1985).

[42] *Currault v. ARTCO*, No. 24-30471, at *7-8 (5th Cir. Dec. 8, 2025).

[43] *See Margate Shipping Co. v. M/V JA Orgeron*, 143 F.3d 976, 995 (5th Cir. 1998).

[44] 143 F.3d 976, 995 (5th Cir. 1998).

[45] 143 F.3d 976, 995 (5th Cir. 1998).

[46] ROA.1089 ¶ 47 (emphasis added).

chose to award 20% of the value of ARTCO's barges, nearly double the percentage awarded in *Margate*.[47]

A salvage regime without a specific intent rule and with such large awards available will encourage "rescues" even when there is no clear beneficiary, as a vessel downriver may *later* be identified as having been subjected to peril. Such a ruling unduly broadens the scope of salvage law, mutating it into a lottery system.

### III.    CONCLUSION

This is a matter of exceptional importance in a jurisdiction that leads the country with its admiralty expertise.[48] The Fifth Circuit is the preeminent jurisdiction for admiralty matters and adjudicates more admiralty cases than any other circuit court in the nation.[49] The Fifth Circuit's admiralty expertise and leadership is needed here to examine both the legal incongruities, but also the practical consequences of the Court's decision. ARTCO respectfully requests that the Court grant rehearing *en banc*.

---

[47] ROA.1090 ¶ 49.
[48] *See* E. Murphy, et al., ADMIRALTY LAW, 22 Tex. Tech L. Rev. 365, 390 (1991).
[49] A. Rubin, THE ADMIRALTY CASE ON APPEAL IN THE FIFTH CIRCUIT, 43 La. L. Rev. 869 (1983).

December 22, 2025                    Respectfully submitted,

                                     /s/ Marcelle P. Mouledoux

                                     Marcelle P. Mouledoux
                                     Morgan Kelley
                                     McGLINCHEY STAFFORD, PLLC
                                     601 Poydras Street, Ste. 1200
                                     New Orleans, Louisiana
                                     Phone: (504) 596-2753
                                     mmouledoux@mcglinchey.com

                                     *Counsel for Defendant-Appellant*
                                     *American River Transportation*
                                     *Co., LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

Dated: December 22, 2025              */s/ Marcelle P. Mouledoux*
                                      Marcelle P. Mouledoux

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 40(d)(3)(A) because this brief contains 2962 words, excluding the parts of the brief exempted by FED R. APP. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Time New Roman font, except that the footnotes are in 12-point font as permitted by Fifth Circuit Rule 32.1.

*/s/ Marcelle P. Mouledoux*